HERSEY, Judge.
The state appeals from an order granting a motion to suppress evidence as illegally obtained. The evidence consists of jewelry alleged to be stolen. Some of this jewelry was handed over to the police without a search. The remainder was obtained as the result of a written consent to search form sighed by appellee.
The issue in this appeal is whether the consent was voluntary. The appropriate test for voluntariness to be applied here depends upon the legality of a prior stop and subsequent circumstances which we now detail.
During the course of a routine patrol, Officers Rodriguez and Sylvester of the *312 Delray Beach Police Department received a radio communication to be on the lookout for a black male wearing a short-sleeved yellow shirt who had been observed in the vicinity of a coin laundry that had been robbed. Our Supreme Court has recently had occasion to articulate the formula for testing the validity of a stop made by law enforcement personnel on the basis of information received from an anonymous source. In Hetland v. State, 387 So.2d 963 (Fla.1980), it was held:
A valid stop and frisk may be based on information obtained from an anonymous tipster if that information appears sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip itself.
The present case involves a Bolo which may well have been based upon an anonymous tip. In any event it must either be shown to have been based upon reliable information or it must be shown to meet the test applicable to information received from an anonymous source. To this extent the rule embodied in our holding in St. John v. State, 363 So.2d 862 (Fla. 4th DCA 1978) must be considered to have been modified by the Hetland case. In Re G.A.R., 387 So.2d 404 (Fla. 4th DCA 1980).
The officers observed appellee, a black male in a short-sleeved yellow shirt, carrying a paper bag and approaching from the general direction of the coin laundry. It was approximately 5:00 a. m., there was no one else on the street and appellee was described as “kind of hastily crossing the street with a brown paper bag, sort of looking ahead of himself. And well, just walking ahead of himself, kind of hastily.”
While probable cause is not required to justify a temporary detention, something more than mere suspicion is required. In State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978), this court held:
To justify temporary detention, only “founded suspicion” in the mind of the detaining officer is required .... A “founded suspicion” is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge. “Mere” or “bare” suspicion, on the other hand, cannot support detention.... Mere suspicion is no better than random selection, sheer guesswork, or hunch, and has no objective justification.
As an example of circumstances not giving rise to a founded suspicion, the court delineated the following:
Merely driving around town in an out-of-state van, or walking along a street late at night, or looking or pointing at policemen, or pulling out of a parking lot when the police come into view, with nothing more, is insufficient to justify an individual’s detention. Id.
In the instant case, the trial court found that the officers had not observed facts sufficient to form the founded suspicion necessary to justify the stop. We note that the learned trial judge did not have the benefit of the rationale expounded by the Hetland court. Based on that opinion we disagree with the trial court’s findings.
We therefore hold that the stop was justified. Florida’s Stop and Frisk Law, Section 901.151, Florida Statutes (1979), requires that a law enforcement officer, encountering an individual, may temporarily detain him if the encounter occurs “under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county.” The initial stop here meets the statutory minimum.
The initial interrogation of appellee was conducted by Officer Rodriguez who was a rookie in training. As appellee was walking away the two officers concluded that additional matters should have been inquired into. They overtook appellee within thirty seconds of the first stop whereupon Officer Sylvester conducted further inquiry. As a result, they were told that he was returning from work at Sambo’s Restaurant; however, later investigation disclosed that appellee was not at that time employed by Sambo’s Restaurant.
*313 Appellee urges that this second stop was illegal per se, construing the Stop and Frisk Law as permitting only one stop of a very limited duration and confined to a relatively small area.
Officer Rodriguez was a trainee. His first interrogation of appellee fell short of obtaining information which would be of any real value. That interrogation should have been carried out in the presence of Officer Sylvester, who then could have and should have supplemented the interrogation by making such additional inquiries as were appropriate under the circumstances. We therefore criticize the training technique but find that the ineptitude with which it was conducted, requiring two stops rather than one, does not constitute that invasion of appellee’s constitutional rights required to invalidate the stop. There will be circumstances under which it will be reasonable to make more than one stop under the statute and in each instance the facts must be examined to determine whether multiple stops are valid. They are not and should not be absolutely prohibited by the language of the statute.
As a result of a written report of these two encounters filed by the officers, detectives from the police department picked up appellee and brought him to the police station for further questioning. Jewelry believed to be stolen was observed on appel-lee’s person which he then voluntarily turned over to the police. In addition, he signed a consent to search form as a result of which his place of residence was searched and additional jewelry was recovered. At the suppression hearing appellee’s counsel stipulated that some of the jewelry was obtained by virtue of a consent to search form signed by appellee and that the balance of the jewelry was given to the police by appellee “and they did not have to search him.”
The record therefore discloses that appellee walked into the police -station wearing some of the jewelry in plain view. There was testimony that he voluntarily turned over the jewelry on his person to the police officers. He then executed a written form of consent to search his residence. He was not under arrest and the evidence is devoid of any suggestion of coercion or the presence of other factors that might detract from the voluntariness of the consent. In view of the fact that appellee offered no evidence whatsoever of involuntariness that might have shifted the very substantial burden of going forward with the evidence back to the state, mandating affirmance at this level, we find that the state carried its initial burden on the issue of the voluntariness of the consent.
In summary we find that both stops were lawful and that the evidence was obtained by virtue of knowing and voluntary consents.
Accordingly, we reverse the order appealed from and remand this cause to the trial court for further proceeding.
REVERSED AND REMANDED.
ANSTEAD and BERANEK, JJ., concur.