893 P.2d 474

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Maria DE JESUS–SANTIBANEZ,
Defendant–Appellant.**

**No. 15353.**

Court of Appeals of New Mexico.

Feb. 17, 1995.

Certiorari Denied April 4, 1995.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, David Henderson, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant appeals her convictions for possession of and conspiracy to possess marijuana. Defendant raises several arguments on appeal concerning whether the trial court erred in failing to suppress evidence discovered when police officers stopped the truck in which she was riding. Defendant claims the "Be–On–the–Lookout" bulletin (BOLO) that precipitated the stop was not based on reliable information and did not provide reasonable suspicion to conduct an investigative stop. Defendant further claims that the second investigative stop was not supported by reasonable suspicion. We affirm Defendant's convictions.

## FACTS

On June 19, 1993, Manuel Olmos, a United States Customs Agent in El Paso, Texas, received information from a "reliable, confidential" informant that a truck would be carrying a load of marijuana and cocaine from El Paso, Texas, to Colorado. According to Olmos, the informant had recently provided information that had been corroborated. Olmos passed on this information to the New Mexico State Police and to the United States Border Patrol. Both departments issued BOLOs for the suspect vehicle.

The BOLO received by the Otero County Sheriff's Department (Sheriff's Department) at about 11:30 p.m. was introduced as State's Exhibit 1 and included the language "Attention Routes I–25 NB [Northbound] from Las Cruces to Raton" in the teletype. The BOLO described a 1970 or 1980 GMC or Chevrolet vehicle, brown with beige in the middle portion of the vehicle and with dark tinted windows. The vehicle was described as having departed from El Paso at 9:45 p.m. en route to Colorado with one male occupant and one female occupant named "Marie Santidanez [sic]." The BOLO indicated that the vehicle was suspected of carrying marijuana and cocaine.

Deputy Ronald Gillette of the Sheriff's Department received the BOLO information from the dispatcher and proceeded immediately to a parking lot on the south end of Alamogordo near New Mexico Highway 54. Deputy Gillette testified that he was not concerned with the vehicle's destination, but knew that the vehicle was northbound from El Paso and that the two most direct routes north from El Paso were Interstate 25 and State Highway 54. At approximately midnight, Deputy Gillette observed a truck matching the description in the BOLO travelling north on Highway 54 into Alamogordo. He testified that the truck was a brown and beige GMC or Chevy pickup truck with dark tinted windows and Texas plates.

Based on the BOLO information, Deputy Gillette decided to stop the truck. Deputy Gillette followed the truck into town so that he could stop it in an area with better lighting. He did not activate his emergency equipment at any time. While following the truck for approximately one-eighth to one-quarter of a mile, Deputy Gillette paced the speed of the truck at seven miles above the posted speed limit. The truck pulled into the parking lot of a convenience store, and the driver went into the store. Deputy Gillette parked on the passenger side of the truck.

When the driver came out of the store, Deputy Gillette approached him and told him that he had been speeding and that his vehicle matched the description contained in a BOLO bulletin for a vehicle suspected of transporting illegal drugs. According to Deputy Gillette, the driver was very cooperative. Although Deputy Gillette made no request to search the vehicle, the driver volunteered to let the officer do so. After a cursory look at the truck and a short conversation with the driver, Deputy Gillette returned to his patrol car without issuing any citations. As he was backing out of the parking space, Deputy Gillette remembered that he had not asked for the passenger's name. He stopped his patrol car just behind the truck and approached the passenger side of the truck. Upon discovering that the pas-

senger's name matched the information in the BOLO, Deputy Gillette told the occupants that they would be detained a little longer while he requested a "sniff" dog to further investigate the truck.

The dog arrived approximately five to ten minutes later. The dog alerted while in the bed of the truck, and officers discovered that the tool box had a false back. The compartment behind the tool box contained approximately sixty-five pounds of marijuana. Deputy Gillette testified that the time from the point of initial encounter to the time that the marijuana was discovered totalled twenty minutes.

### CONFIDENTIAL INFORMANT

■ Defendant challenges the informant's "reliability." Defendant uses "reliability" to challenge both the veracity of the informant and the trustworthiness of his information. On the basis of *State v. Cordova,* 109 N.M. 211, 784 P.2d 30 (1989), he argues that an informant and his information must meet a higher standard under the New Mexico Constitution than under the United States Constitution. *See generally* Jodi Levine Avergun, Note, *The Impact of Illinois v. Gates: The States Consider the Totality of the Circumstances Test,* 52 Brook.L.Rev. 1127 (1987) (discussing state court interpretation of the federal and state constitutional law on informants). Before Defendant can prevail on the merits of this argument, however, she must demonstrate that the issue was preserved below. The record indicates that, although Defendant may have preserved the general argument that the New Mexico Constitution affords greater protection than the United States Constitution, she did not preserve her specific argument concerning the reliability of the confidential informant.

Notwithstanding Defendant's argument to the contrary, nothing in Defendant's written motion to suppress attacked the reliability of the informant or his information. She made no statement concerning the credibility or basis of knowledge of the informant at the motions hearing. Defendant asked some questions of the officer about the credibility of the informant and whether information from that informant had led to arrests or seizures. However, when Defendant cross-examined the officer, and the officer claimed privilege to avoid disclosing further information regarding the informant, Defendant did not ask the district judge to require the officer to answer the questions. Furthermore, Defendant made no request for an in camera hearing to determine the credibility of the informant. Defendant made no mention of the confidential informant in closing argument, except to argue that the information provided by the informant had not been corroborated at the time the BOLO was issued. Defendant's argument focused on whether the information in the BOLO was enough to stop the truck and whether additional information from the BOLO was enough for a second stop.

We hold that, by failing to even articulate the issues Defendant raises on appeal about the informant's credibility and the trustworthiness of his information, Defendant has waived her claim that the informant's reliability was not sufficiently shown under the New Mexico Constitution. *See State v. Ongley,* 118 N.M. 431, 432, 882 P.2d 22, 23 (Ct. App.1994); *see also State v. Lucero,* 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct.App. 1986) (well settled that issues must be raised below to preserve them for appellate review, and manner in which issues are raised must be sufficiently specific to allow trial court to make an intelligent ruling). Although refusing to consider appellate contentions because of lack of preservation may appear harsh at first blush, consideration of the specific circumstances of this case will show that it is particularly appropriate to apply the lack-of-preservation rule here. Our recent cases have refused to consider contentions raised for the first time on appeal when the failure to raise those contentions in the trial court has deprived the prevailing party of an opportunity to develop facts that might bear on the contentions. *See, e.g., State v. Ramzy,* 116 N.M. 748, 751, 867 P.2d 418, 421 (Ct.App. 1993), *cert. denied,* 116 N.M. 801, 867 P.2d 1183 (1994). By failing to alert the district judge of the need to ascertain the credibility of the informant and the basis of his information at the time the officer refused to answer questions relevant to those issues, Defendant deprived the State of the opportunity to elicit

facts that could have cured any seeming unreliability of the informant or his information. In these circumstances, it is particularly appropriate to hold that Defendant waived her issues under the New Mexico Constitution.

### REASONABLE SUSPICION PROVIDED BY BOLO

■ On appeal, Defendant renews her argument that the information provided by the BOLO was insufficient to justify an investigatory stop. The information available to the Sheriff's Department included a detailed description of the vehicle as a 1970 or 1980 GMC or Chevrolet, brown with beige in the middle portion of vehicle with dark tinted windows. The vehicle in which Defendant was riding matched this description. The BOLO further indicated that the vehicle was travelling north from El Paso, Texas, en route to Colorado. The vehicle was described in the BOLO as having departed from El Paso at 9:45 p.m. The Sheriff's Department received the BOLO information from the dispatcher at 11:30 p.m. The vehicle was spotted on Highway 54 at approximately midnight.

Defendant makes much of the fact that the BOLO information contained the heading, "Attention Routes I–25 NB [Northbound] from Las Cruces to Raton." Agent Olmos testified he did not specify a route in the information he provided as the basis for the BOLO. The use of the word "routes" in plural, however, could mean that Interstate 25 was not the only route north being referred to in the BOLO bulletin. Furthermore, even if the BOLO bulletin was specifying that the vehicle would be travelling north on I–25, it was reasonable for Deputy Gillette to consider whether a vehicle carrying contraband might travel on a lesser travelled route in order to escape detection. It was also reasonable for Deputy Gillette to believe that a vehicle travelling from El Paso would have a Texas license plate.

The description of the vehicle, the time and direction of travel, the route travelled by the vehicle, and the origin of the vehicle's license plate, all matched the specific information given by the BOLO or reasonable inferences drawn therefrom. This is sufficient to provide reasonable suspicion for an investigatory stop. *See, e.g., State v. Lovato,* 112 N.M. 517, 519, 817 P.2d 251, 253 (Ct.App.) (officers had sufficient basis for reasonable suspicion when they saw a car fitting the description of a car involved in a drive-by shooting in the same area shortly after the report), *cert. denied,* 112 N.M. 388, 815 P.2d 1178 (1991); *cf. State v. Watley,* 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App.1989) (reasonable suspicion to stop black man in the area even though rapist was described as Hispanic wearing a ski mask), *cert. denied,* 109 N.M. 563, 787 P.2d 1246 (1990).

### VALIDITY OF SECOND STOP

■ The trial court found that Deputy Gillette made a second stop. The second stop occurred after Deputy Gillette indicated that the driver was free to leave and then, upon backing his patrol car out of the parking space, remembered that he had not asked Defendant, the passenger in the vehicle, her name. Defendant maintains that, once the first stop was terminated, Deputy Gillette's desire to determine the passenger's name was not, by itself, enough to justify a second stop. The State argues that no new suspicion was necessary because the second stage of detention was merely a continuation of the first stop.

While we agree that there is evidence to support the trial court's finding of two different stops in this case, we do not agree that it was impermissible to make a second stop under these circumstances. The facts of the present case are analogous to those in *State v. Amerson,* 392 So.2d 311 (Fla.Dist.Ct.App. 1980). In *Amerson,* an officer received a BOLO for a black male in a short-sleeved yellow shirt. *Id.* at 312. An officer in training stopped the defendant, asked questions, and let him leave. *Id.* Another officer decided that the questions were not sufficient. *Id.* Therefore, within thirty seconds of the initial stop, the other officer again stopped the defendant to ask additional questions. *Id.* The Florida court criticized the ineptitude with which the initial stop was conducted but recognized:

> requiring two stops rather than one, does not constitute that invasion of appellee's constitutional rights required to invalidate the stop. There will be circumstances un-

der which it will be reasonable to make more than one stop under the statute and in each instance the facts must be examined to determine whether multiple stops are valid.

*Id.* at 313.

We agree with the *Amerson* Court that, rather than apply a mechanical counting of stops, the facts of each situation must be considered. In the present case, the minimal intrusion resulting from the second stop does not exceed the permissible bounds of an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Deputy Gillette's second stop was merely to ascertain the passenger's name. Almost no time passed between the end of the first stop and the beginning of the second stop. The driver had not even reentered the vehicle at the time Deputy Gillette initiated the second stop. Indeed, the total time of detention, from the point of the initial questioning to the discovery of the marijuana, was twenty minutes. The minimal detention occasioned by the two stops was a reasonable police investigation of the information contained in the BOLO and did not violate Defendant's constitutional rights. *See Amerson,* 392 So.2d at 312–13; *see also State v. Porras–Fuerte,* 119 N.M. 180, 184, 889 P.2d 215, 219 (Ct.App.) (reasonableness of detention rests on balancing the nature and quality of the intrusion against importance of governmental interests), *cert. granted,* 119 N.M. 21, 888 P.2d 467 (1994). Under the facts of this case, we hold that the reasonable suspicion supporting the first stop was also sufficient to justify the second stop.

*PROBABLE CAUSE TO SEARCH VEHICLE*

Regarding this issue, Defendant appears to include an argument that her detention by the officers amounted to a *de facto* arrest. Once again, there is nothing in the record to indicate that Defendant preserved this issue for appeal. *See State v. Lopez,* 105 N.M. 538, 544, 734 P.2d 778, 784 (Ct.App.1986) (failure to object below prohibits raising of issue on appeal), *cert. quashed,* 105 N.M. 521, 734 P.2d 761, *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1987).

Defendant further argues that there was no probable cause to search the vehicle. We disagree. As we have discussed, Deputy Gillette had reasonable suspicion to stop the vehicle. After discovering that Defendant's name matched the passenger's name provided in the BOLO, Deputy Gillette had justification to detain the occupants of the vehicle for matters related to the investigation. *See State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). During the brief detention, a drug detection dog was brought to the scene. The dog alerted to the bed of the truck, which gave the officers probable cause to search the vehicle. *See State v. Capps,* 97 N.M. 453, 456, 641 P.2d 484, 487 (smell of marijuana alone can satisfy probable cause requirement), *cert. denied,* 458 U.S. 1107, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982). Therefore, by the time the actual search began, probable cause had been established.

Because Defendant does not prevail on this issue, we need not address the State's argument that Defendant lacks standing to question the search.

*CONCLUSION*

Based on the foregoing, we affirm the trial court's denial of Defendant's motion to suppress and her convictions.

IT IS SO ORDERED.

APODACA, C.J., and PICKARD, J., concur.