**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCOS ANTONIO REYEZ,

Defendant - Appellant.

No. 05-4093
(D. Ct. No. 2:04-CR-410-02-DB)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **KELLY**, Circuit Judges.

Following a jury trial, Defendant-Appellant Marcos Antonio Reyez was convicted of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and sentenced to 188 months' imprisonment. Mr. Reyez challenges his conviction on the ground that the District Court improperly admitted expert testimony relating to his state of mind. We have jurisdiction under 28 U.S.C. § 1291 and we AFFIRM.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.  BACKGROUND

On May 31, 2004, Utah Highway Patrol Trooper Ryan Bauer observed a white Jeep Cherokee traveling seventy-two miles per hour in a sixty-five mile per hour zone. After Trooper Bauer pulled over the Jeep, he approached the passenger's side of the vehicle to avoid oncoming traffic near the driver.  He explained to Mr. Reyez, the passenger, and Jose Garcia, the driver, that he pulled them over for speeding.  Mr. Garcia handed over his driver's license, which had been issued by the state of Nebraska.  He stated that the two men were traveling from California to Nebraska to visit relatives for a couple of days.

During the traffic stop, Trooper Bauer smelled what he described as an "overwhelming" odor of motor oil—a smell that, based on his experience, indicated mechanical problems with the vehicle or that the oil was being used to mask the scent of drugs.  When he asked Mr. Garcia about the smell and whether he was having trouble with the Jeep, Mr. Garcia indicated the vehicle was fine and that he did not notice the smell.  Trooper Bauer also noticed that both Mr. Garcia and Mr. Reyez were shaking badly and that neither man would make eye contact with him.

Trooper Bauer verified the legitimacy of Mr. Garcia's driver's license and issued him a warning ticket for speeding.  The trooper then asked Mr. Garcia to step out of the Jeep and walk toward the rear of the vehicle.  After making additional inquiries about the smell of oil, Trooper Bauer asked Mr. Garcia if he could look in the vehicle.  Mr. Garcia opened the hatchback and began showing Trooper Bauer some of the contents in the rear

of the vehicle. Trooper Bauer noticed, however, that Mr. Garcia made a special effort to avoid showing him one box by pushing it between a speaker and the backseat. Trooper Bauer also noticed two opened containers of laundry detergent. He found the latter suspicious since there were only two passengers and a few articles of clothing strewn around the vehicle. He also knew, based on his experience, that laundry detergent was sometimes used to mask the scent of drugs. Trooper Bauer then asked for permission to search the Jeep, and Mr. Garcia consented.

Trooper Bauer ordered the men to stand near the front of the Jeep next to a large construction barrel. The trooper then conducted a dog sniff of the vehicle while Mr. Garcia and Mr. Reyez conversed and paced at the front of the vehicle. The dog alerted to the box wedged between the speaker and the backseat. Trooper Bauer opened the box and discovered two packages wrapped in black electrical tape. The trooper cut into one of the packages and found that it contained layers of tape, oil, plastic wrap, and mustard. The last layer was a vacuum-sealed package containing a substance he recognized as methamphetamine.

The trooper called for backup and asked Mr. Garcia to come over to the rear of the Jeep so he could be taken into custody. He then ordered Mr. Garcia to put his hands on his head; after Trooper Bauer repeated his request several times, Mr. Garcia acquiesced. As Mr. Garcia was being handcuffed, Mr. Reyez began to approach the trooper and Mr. Garcia. Trooper Bauer ordered Mr. Reyez to return to the front of the vehicle, but he continued on his path. Trooper Bauer repeated the order and pulled his pepper spray from

his belt. Still not heeding the trooper's warnings, Mr. Reyez walked to the rear of the Jeep and peered into the open hatchback where the drugs were visible. After the trooper threatened to deploy his dog, Mr. Reyez finally retreated to the front of the Jeep. Trooper Bauer ordered Mr. Reyez to get to his knees.

Trooper Bauer returned his attention to Mr. Garcia, who had not yet been handcuffed fully. But before the trooper could lock the handcuffs, Mr. Garcia threw his hands in the air and ran toward the driver's door of the Jeep. Mr. Reyez then rose from his knees and ran to the passenger door. Both men got inside the vehicle with Trooper Bauer chasing after Mr. Garcia. The trooper climbed onto the running board and reached into the window to grab Mr. Garcia, who had already started the Jeep and began pulling away. Trooper Bauer jumped off, and the two men drove away with the hatchback still open. The drugs that had been sitting on the rear of the vehicle fell off onto the road. Tests later determined that the Jeep contained 2.369 kilograms of methamphetamine.

A chase followed. After approximately twenty minutes and after reaching speeds of ninety miles per hour, another officer was able to spike the Jeep's tires. Undeterred, Mr. Garcia continued driving until the rubber fell loose from the tires' rims. Once the damaged vehicle slowed to about twenty miles per hour, it veered across a median, went down a dirt embankment, and crashed through a fence into a field. With the vehicle still moving, both Mr. Garcia and Mr. Reyez jumped out and ran from the officers. Mr. Reyez was caught and arrested; Mr. Garcia was never located.

During Mr. Reyez's trial for possession with intent to distribute methamphetamine,

the Government—over Mr. Reyez's objection—elicited expert testimony from Trooper Bauer and Agent Brent Dunlap, an investigator for the Utah Department of Public Safety who had interviewed Mr. Reyez after his arrest, relating to whether Mr. Reyez knew that the Jeep contained methamphetamine. Mr. Reyez was convicted, and he now appeals the admission of that expert testimony.

## II. DISCUSSION

### A. Standard of Review

We review a district court's decision to admit expert testimony for an abuse of discretion. *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). Decisions that are "arbitrary, capricious, whimsical, or manifestly unreasonable" constitute an abuse of discretion. *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991). Even if we conclude that the court abused its discretion, however, reversal is not warranted if the error is harmless—that is, if it did not have "a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *United States v. Turner*, 285 F.3d 909, 914 (10th Cir. 2002) (alteration omitted).

### B. Merits

To obtain a conviction for possession of methamphetamine with intent to distribute under 21 U.S.C. § 841(a)(1), the Government must prove beyond a reasonable doubt that Mr. Reyez (1) possessed methamphetamine; (2) knew he possessed methamphetamine; and (3) intended to distribute methamphetamine. *See United States v. Harris*, 369 F.3d 1157, 1163 (10th Cir. 2004). In this case, the Government elicited expert testimony from

Trooper Bauer and Agent Dunlap related to the second element—whether Mr. Reyez knew the Jeep contained methamphetamine. The following colloquy took place between the Government and Trooper Bauer:

Q: Now, based upon your training and experience, where people have not had knowledge, have they tended to follow your commands or do they disregard your commands?

A: Those who tend to show the innocent behavior when we are trying to make a determination on charges and so forth, and in reviewing this case in my mind over and over again, that is one of the things I keep coming back to, is the fact that at the moment that I tried to take the driver into custody, Mr. Reyez made a concerted effort to come back and disobey my commands, and then following that, the fact that he disobeyed my commands later and also continued to run.

Later, the Government asked Agent Dunlap:

Q: Based upon the questions that you posed to the defendant, did you develop some factors that would cause you to believe that the defendant knew the methamphetamine was located in the vehicle prior to the stop?

After an objection was overruled, the question was repeated and answered:

Q: What overt acts did you observe from the defendant that would cause you to believe that he had knowledge that the drugs were in the car?

A: Prior to his interview I did watch the videotape that Trooper Bauer had taken of the traffic stop. In just watching him interfere with Trooper Bauer during the arrest and trying to distract Trooper Bauer, and just his reaction when he was told that there were drugs in the vehicle and how he was curious and just not very excited about it and defensive about it. The fact that he was also fleeing kind of led me to believe that he had knowledge of it.

Mr. Reyez argues that Trooper Bauer's and Agent Dunlap's expert testimony violated Fed. R. Evid. 704(b), which states:

- 6 -

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The Rule does not preclude expert testimony on "facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state." *United States v. Richard*, 969 F.2d 849, 855 (10th Cir. 1992). Rather, the Rule only prohibits an "expert[] from expressly stating the final conclusion or inference as to a defendant's actual mental state." *Id.* at 854; *see also United States v. Dunn*, 846 F.2d 761, 762 (D.C. Cir. 1988) ("It is only as to the last step in the inferential process—a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent."); *United States v. Foster*, 939 F.2d 445, 454 (7th Cir. 1991) (testimony that "merely assist[s] the jury in coming to a conclusion as to [the defendant's] mental state [and does] not make that conclusion for [the jury]" is permissible under Rule 704(b)).

Put another way, "[a] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea*." *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997).

Given this standard, Agent Dunlap's statement that Mr. Reyez's behavior "led me to believe that [Mr. Reyez] had knowledge" of the presence of methamphetamine in the Jeep clearly runs afoul of Rule 704(b). Such testimony "expressly stat[es] the final conclusion or inference as to a defendant's actual mental state," *see Richard*, 969 F.2d at

854. The District Court therefore abused its discretion in admitting the opinion.

In contrast to Agent Dunlap's statement, Trooper Bauer's testimony does not so clearly implicate Rule 704(b). Nevertheless, that the trooper's answer is not a model of clarity does not shield it from the constraints of the Rule. Because Trooper Bauer prefaced his comments about Mr. Reyez's non-cooperation with the statement that "[t]hose who tend to show innocent behavior *when we are trying to make a determination on charges and so forth . . .*", we cannot say that the statement is a simple recitation that Mr. Reyez actively disobeyed his commands during the traffic stop and ensuing chase rather than an improper opinion as to Mr. Reyez's mens rea.

We need not, however, decide this precise issue because even assuming the District Court abused its discretion in permitting Trooper Bauer's testimony as well as Agent Dunlap's testimony, we find such error to be harmless. Indeed, a review of the entire record shows that the Government presented a compelling case against Mr. Reyez, even in the absence of the testimony. Trooper Bauer testified about the overwhelming odor of oil in the Jeep, which to him possibly indicated the presence of drugs. The jury was permitted to smell the opened package of methamphetamine to determine for themselves the strength of the scent. The import of such evidence is that the jury could infer that Mr. Reyez actually could detect the odor—although he denied he could smell it during his post-arrest interview—and also knew it was being used to mask the scent of the methamphetamine. In addition, testimony at trial showed that Mr. Reyez was shaking and refused to make eye contact with Trooper Bauer, that Mr. Reyez and Mr. Garcia were

taking a four-day drive from California to Nebraska to visit relatives for only a couple of days, that despite such a long journey the men had no luggage, and that despite the absence of luggage or many clothes the men were carrying two open containers of detergent—another agent used to mask the smell of drugs. Moreover, the jury was shown the video recording of the stop, in which Mr. Garcia and Mr. Reyez are shown to be engaging in a conversation just minutes before they ran back into the vehicle and sped away. The video also details Mr. Reyez's repeated noncompliance with Trooper Bauer's orders, interference with Mr. Garcia's arrest, and flight from pursuing officers—all conduct that indicates Mr. Reyez was fully aware of the packages of methamphetamine in the rear of the Jeep. We therefore affirm the conviction despite the District Court's error because the error did not substantially influence the jury's verdict. *See Turner*, 285 F.3d at 914.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,

Deanell Reece Tacha
Chief Circuit Judge