IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellant,

v.                                                                    No. 29,468

MARIA ALBAREZ,

Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Charles W. Brown, District Judge

Gary K. King, Attorney General
Santa Fe, NM

Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellant

Hugh W. Dangler, Chief Public Defender
Nancy Hewitt, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**VIGIL, Judge.**

The State is appealing from a district court order suppressing evidence. The order was filed on April 1, 2009. [RP 62] We issued a calendar notice proposing to

affirm, and the State has responded with a timely memorandum in opposition. We affirm.

Whether a search and seizure was constitutional is a mixed question of law and fact. *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836 (citing *State v. Vandenberg*, 2003-NMSC-030, ¶ 17, 134 N.M. 566, 81 P.3d 19). We review factual determinations by the trial court under a substantial evidence standard. *Id.* We review the lower court's determination of legal questions de novo. *Id.*

In this case, members of the Albuquerque Police Department's Valley Narcotics Task Force were working undercover near an intersection in Albuquerque in response to citizen complaints of criminal activity. [MIO 2; DS 2] Among the complaints was an unspecified allegation that a white Mustang might be involved in drug trafficking. [DS 3] Detective Patrick Ruiloba was working traffic duty, but was also assigned to the task force. [DS 2-3] Detective Ruiloba observed a white Mustang, noticed that it had a cracked windshield, and followed it to a store parking lot. [DS 4] He pulled up alongside of it and turned his spotlight on the Mustang, Defendant's vehicle. [DS 4] The detective noticed some activity by the passenger prior to approaching Defendant, at which time he informed her that he stopped her because of the cracked windshield. [DS 5] Other plain clothes officers arrived while Detective Ruiloba was questioning Defendant. [DS 6] Detective Ruiloba testified that Defendant seemed nervous, and her answers to his questions raised his suspicions. [DS 7] Detective Ruiloba issued the citation, told her she was free to leave, but then called Defendant back after she had

returned to her vehicle. [DS 7] Detective Ruiloba then began questioning about weapons and drugs, and she then consented to a search, informing him that there was crack cocaine in the vehicle. [DS 7] Relying on this Court's opinion in *State v. Ochoa*, 2009-NMCA-002, 145 N.M. 32, 206 P.3d 143, *cert. granted*, 2008-NMCERT-012, 146 N.M. 572, 203 P.3d 103 (No. 31,430, Dec. 30, 2008), the district court granted Defendant's motion to suppress after determining that the stop was pretextual. [RP 62] The district court also determined that, even if the stop had not been pretexual, it became invalid once it was prolonged to include a narcotics investigation [Id.]

Based on the facts set forth above, we disagree with the State's contention that the initial encounter was not a stop. Not only did Detective Ruiloba pull his vehicle alongside Defendant's vehicle, activating his spotlight, but he specifically informed Defendant of the reason she had been seized. [DS 4-5] *See State v. Scott*, 2006-NMCA-003, ¶ 19, 138 N.M. 751, 126 P.3d 567 ("[A] seizure occurs when there is either a 'use of physical force by an officer or submission by the individual to an officer's assertion of authority.'"). The State's memorandum in opposition [MIO 2-4] omits these critical facts, i.e. pulling up alongside the vehicle, activating the spotlight, and informing Defendant that she had in fact been seized. [DS 4-5] The State agues that Defendant was not seized when the officer first spoke to her [MIO 8], but omits the subject of that communication, i.e. explaining to her why she was seized. Because

the State's legal arguments are predicated on incomplete facts, we do not find them persuasive with respect to the initial seizure.

Having determined that Defendant was seized at the point of contact, we must consider whether the district court properly determined that the expressed basis for the stop, the cracked windshield, was pretextual. In *Ochoa*, this Court specifically held that the federal analysis regarding pretextual stops is "unpersuasive and incompatible with our state's distinctively protective standards for searches and seizures." 2009-NMCA-002, ¶ 12. We further stated:

> [i]n performing a pretextual traffic stop, a police officer is stopping the driver, not to enforce the traffic code, but to conduct a criminal investigation unrelated to the driving. Therefore the reasonable articulable suspicion that a traffic infraction has occurred which justifies an exception to the warrant requirement for an ordinary traffic stop does not justify a stop for criminal investigation.

*Id.* ¶ 16 (internal quotation marks and citation omitted). As such, as the district court determined in this case, even if the officer had reasonable articulable suspicion that Defendant's vehicle had a cracked windshield, the traffic stop was conducted in order for the officers to investigate Defendant for narcotics trafficking without probable cause. *See id.* ¶ 39 (directing the district courts that "[t]o determine whether a stop is a pretextual subterfuge, courts should consider the totality of the circumstances, judge the credibility of witnesses, weigh the evidence, make a decision, and exclude the evidence if the stop was unreasonable at its inception"). "The totality of the

4

circumstances includes considerations of the objective reasonableness of an officer's actions and the subjective intent of the officer – the real reason for the stop." *Id.*

Initially, we decline the State's invitation to revisit or stay application of *Ochoa*. [MIO 9-10] Turning to the merits, we defer to the district court's factual and credibility determinations, and we hold that there are sufficient facts to support the district court's ruling, including Detective Riuloba's involvement with the Task Force and his expansion of the stop to include questions about narcotics. In addition, we do not believe that there was sufficient independent indicia of criminal activity that would have supported the stop. The mere reference to a white Mustang, with no additional information concerning timing and description, was insufficient. *Cf. State v. De Jesus-Santibanez*, 119 N.M. 578, 581, 893 P.2d 474, 477 (Ct. App. 1995) ("The description of the vehicle, the time and direction of travel, the route traveled by the vehicle, and the origin of the vehicle's license plate, all matched the specific information given by the BOLO or reasonable inferences drawn therefrom. This is sufficient to provide reasonable suspicion for an investigatory stop."). We reject the State's contention, made in the docketing statement [DS 9], that Defendant's consent constituted a separate encounter. *See State v. Prince* 2004-NMCA-127, ¶ 21, 136 N.M. 521, 101 P.3d 332 (holding there was no attenuation and thus tainted consent where officer conducted an improper investigatory detention immediately before seeking consent to search); *State v. Bedolla*, 111 N.M. 448, 456, 806 P.2d 588, 596 (Ct. App. 1991) (holding there was no attenuation where the defendants gave consent

for search after being stopped based on uncorroborated tip that they were dealing cocaine).

For the reasons set forth above, we affirm.

**IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Judge**

_____

**ROBERT E. ROBLES, Judge**