IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-039

Filing Date: June 25, 2009

Docket No. 31,174

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

JULIEN HOLT WILLIAMSON,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Ralph D. Shamas, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Jones Witt Law Firm
Scott Douglas Jones Witt
Roswell, NM

for Respondent

OPINION

MAES, Justice.

{1}    In this appeal, the State claims that the Court of Appeals improperly concluded that the search warrant issued by a district court judge (issuing court) was unsupported by probable cause, and therefore, improperly affirmed the decision of the subsequent district court (suppressing court) to suppress evidence seized pursuant to the search warrant. Specifically, the State argues that the Court of Appeals erroneously: (1) applied a de novo standard of review to the issuing court's determination of probable cause; and (2) concluded that, under the circumstances of the present case, the drug-sniffing dog's failure to alert to

1

the presence of narcotics fatally undermined the issuing court's determination of probable cause. *State v. Williamson*, 2008-NMCA-096, ¶¶ 2, 8-9, 144 N.M. 522, 188 P.3d 1273. We conclude that an issuing court's determination of probable cause should not be reviewed de novo but, rather, must be upheld if the affidavit provides a substantial basis to support a finding of probable cause. We further conclude that the facts alleged in the search warrant affidavit adequately explained the drug-sniffing dog's failure to alert and provided a substantial basis for the issuing court's determination of probable cause. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the district court for further proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

**{2}**    The affidavit submitted in support of the first search warrant alleged the following facts. On October 25, 2005, Julien Holt Williamson (Defendant) brought a package into a UPS Store located on East College Street in Roswell, New Mexico. Defendant informed the store manager, Jennifer Ary, that he wished to send the package to Jesse Gomez in Brooklyn, New York. Defendant appeared to be nervous, and in response to Ary's inquiry as to the contents of the package, Defendant stated that "he did not know" what was inside of the box. When Ary informed Defendant that the package would have to be opened to ascertain its contents, Defendant explained that the box contained a book which he was sending to his son. Although Defendant had mailed packages from this UPS Store before, "this was the first time he appeared nervous and stated he did not know what was in his package."

**{3}**    Ary "did not feel right about the package," and consequently, she opened it after Defendant had left the store. Inside she found a clear plastic bag, which appeared to be vacuum sealed, containing two containers, a Crystal Light cylinder and a Ferrero box, both wrapped in gray duct tape. Ary contacted the Roswell Police Department to report the suspicious package.

**{4}**    Sergeant Eric Brackeen, a certified law enforcement officer assigned to the Chaves County Metro Narcotics Task Force Division of the Roswell Police Department, responded to Ary's call. Sergeant Brackeen noticed that the "[Crystal] Light container was crunched in, apparently from the bag being vacuum sealed." He summoned canine handler, Detective Jimmy Preston, and narcotics detection dog, Coro, to inspect the package for the presence of narcotics. Coro sniffed the package, but failed to indicate a positive response for the presence of narcotics.

**{5}**    Despite Coro's failure to alert, Sergeant Brackeen averred that, on the basis of his professional training and eleven years of law enforcement experience, he knows that "often times narcotics are packaged in unusual containers, wrapped with duct tape, and vacuum sealed, to make the narcotics less detectable by narcotic detection canines," and additionally, that "narcotics are often mailed to other places using carriers such as UPS." Accordingly, Sergeant Brackeen believed that probable cause existed to issue a search warrant for the package.

2

**{6}** The issuing court issued the search warrant. When Sergeant Brackeen executed the search warrant, he found 1.95 ounces of marijuana inside of the Crystal Light and Ferrero containers. Based on this evidence, Sergeant Brackeen procured a second search warrant to search Defendant's residence for illegal narcotics and paraphernalia. When the second search warrant was executed, drug paraphernalia was found in Defendant's home. Thereafter, Defendant was charged by criminal information with possession of marijuana with intent to distribute in violation of NMSA 1978, Section 30-31-22 (2005), and possession of drug paraphernalia in violation of NMSA 1978, Section 30-31-25.1 (2001).

**{7}** Prior to trial, Defendant moved to suppress the marijuana and drug paraphernalia evidence, claiming that it had been obtained "in violation of his constitutional rights to be free from unreasonable search and seizure under the Fourth Amendment [to] the United States Constitution and Article 2, Section 10 of the New Mexico Constitution." Defendant argued that the marijuana evidence should be suppressed because the affidavit submitted in support of the first search warrant failed to set forth sufficient facts to establish probable cause. Defendant argued that the drug paraphernalia evidence also should be suppressed as fruit of the poisonous tree. The suppressing court granted Defendant's motion, concluding that "the negative sniff by the detection dog in this case refuted and even eliminated any suspicion that otherwise existed by reason of the pre-warrant occurrences and observations at the UPS store."

**{8}** The Court of Appeals, in a divided opinion, affirmed the decision of the suppressing court. *Williamson*, 2008-NMCA-096, ¶ 13. The Court stated that, "[i]f narcotics detection dogs in fact are extremely reliable in discriminating narcotics from other substances, then an unexplained failure to alert will significantly, and in marginal cases may fatally, undermine an otherwise sufficient showing in support of a warrant." *Id.* ¶ 7. The Court concluded that, prior to Coro's failure to alert, it was reasonable to infer that the package contained embarrassing or incriminating material, given Defendant's nervous and evasive behavior, and the suspicious manner in which the containers were packaged. *Id.* ¶ 8. "However, after Coro failed to alert, and in the absence of a satisfactory explanation of why Coro failed to alert, the inference that the package contained drugs was significantly dispelled." *Id.*

**{9}** The Court rejected the State's claim that Sergeant Brackeen's sworn statement that "often times narcotics are packaged in unusual containers, wrapped with duct tape, and vacuum sealed, to make the narcotics less detectable by narcotic detection canines," adequately explained Coro's failure to alert. *See id.* ¶ 9. The Court determined that this statement was not an expression of Sergeant Brackeen's opinion that duct-taping and vacuum-sealing successfully prevented Coro from being able to detect the odor of narcotics, but rather, was "a description of the practice of drug traffickers who commonly believe (rightly or wrongly) that vacuum-sealing will make narcotics less detectable." *Id.* Without a more definite and detailed explanation, the Court concluded that the State had failed to dispel the "strong negative inference arising from Coro's failure to alert." *Id.*

3

**{10}** Even without this negative inference, the Court concluded that the remaining evidence, although certainly suspicious, was insufficient to establish probable cause. The Court noted that "the probable cause inquiry should be 'particularly exacting' when the conduct observed by an officer is consistent with lawful activity, and this is so 'regardless of an officer's qualifications and experience.'" *Id.* ¶ 10 (quoting *State v. Nyce*, 2006-NMSC-026, ¶ 14, 139 N.M. 647, 137 P.3d 587). Because Defendant's conduct was lawful and because there was no evidence linking Defendant to illegal drugs, the Court concluded that "the facts known to [Sergeant Brackeen] prior to the dog sniff did not constitute probable cause to believe that the contents of the package were illegal drugs." *Id.*

**{11}** Judge Sutin dissented from the majority opinion. *Id.* ¶¶ 15-27. He agreed with the majority that "the State has the burden to explain [a canine] alert failure, if it can, and the failure to satisfy that burden ought to be a part of the mix in considering the evidentiary sufficiency for probable cause for a search warrant." *Id.* ¶ 18. However, because the record was inadequate in this case to determine what weight, if any, to attribute to Coro's alert failure, he believed that it should be weighed as a neutral factor. *Id.* ¶ 24. In light of the deference given "to a magistrate's decision, and to an officer's observations, experience, and training," Judge Sutin concluded that the remaining facts set forth in the affidavit were sufficient to establish probable cause. *Id.* ¶ 25 (internal quotation marks and citation omitted). Accordingly, he would have upheld the search warrant and denied Defendant's motion to suppress.

**{12}** We granted the State's petition for writ of certiorari pursuant to NMSA 1978, Section 34-5-14(B) (1966) and Rule 12-502 NMRA to determine: (1) whether the Court of Appeals applied the proper standard of review to the issuing court's determination of probable cause and (2) the impact, if any, that the canine alert failure had upon the issuing court's determination probable cause. *See State v. Williamson*, 2008-NMCERT-007, 144 N.M. 594, 189 P.3d 1216.

## II.    DISCUSSION

### A.    Standard of Review

**{13}** We first address the proper standard of review to apply to an issuing court's determination that the facts alleged in an affidavit are sufficient to establish probable cause. The State claims that, pursuant to precedent established by both the United States Supreme Court and this Court, deference must be shown to an issuing court's determination of probable cause. *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 237 (1983); *State v. Snedeker*, 99 N.M. 286, 290, 657 P.2d 613, 617 (1982). Defendant responds that, under New Mexico law, reviewing courts must apply a de novo standard of review to an issuing court's determination that the facts alleged in the affidavit are sufficient to establish probable cause. *See, e.g.*, *State v. Nyce*, 2006-NMSC-026, ¶ 8, 139 N.M. 647, 137 P.3d 587.

4

**{14}** "The Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *Id.* ¶ 9.

> By injecting a neutral magistrate into the process . . . the law provides a layer of protection from unreasonable searches and seizures. By compelling [law enforcement officers] to show to a neutral magistrate facts from which that impartial judicial representative could conclude that probable cause exists to justify [a search], the law enforcement organizations of this state are prevented from allowing the competitive pressures of fighting crime to compromise their judgment about whether or not to carry out a given search.

*State v. Gomez*, 1997-NMSC-006, ¶ 38, 122 N.M. 777, 932 P.2d 1; *see also United States v. Ventresca*, 380 U.S. 102, 105-06 (1965) ("An evaluation of the constitutionality of a search warrant should begin with the rule that the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests.") (internal quotation marks and citation omitted). Accordingly, both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution express a clear preference in favor of the warrant process.

**{15}** Defendant claims a violation of both his Fourth Amendment and Article II, Section 10 rights to be free from unreasonable searches and seizures. We begin our analysis with an examination of the standard of review for the sufficiency of search warrant affidavits mandated by the Fourth Amendment to the United States Constitution, and then proceed to consider whether the appellate courts of this state have adopted a more stringent standard of review under New Mexico law. *Cf. Gomez*, 1997-NMSC-006, ¶¶ 19-21 ("Under the interstitial approach, the court asks first whether the right being asserted is protected under the federal constitution. If it is, then the state constitutional claim is not reached. If it is not, then the state constitution is examined.").

**1.    Standard of Review Under the Fourth Amendment to the United States Constitution**

**{16}** In *Ventresca*, the United States Supreme Court held that affidavits submitted in support of search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *Ventresca*, 380 U.S. at 108. The Court noted that search warrant affidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation," and that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.* The Court cautioned, however, that

5

[t]his is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based. Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Id.* at 108-09 (internal quotation marks and citations omitted).

**{17}** Thus, under the Fourth Amendment to the United States Constitution, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates*, 462 U.S. at 236 (internal quotation marks and citation omitted). A deferential standard of review discourages police officers from conducting

warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.

*Id.* (internal quotation marks and citation omitted). Accordingly, an issuing court's determination of probable cause must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* (alteration in original) (internal quotation marks and citation omitted); *see also Massachusetts v. Upton*, 466 U.S. 727, 732 (1984) (reversing the judgment of the Massachusetts Supreme Judicial Court because that Court had "erred in failing to grant any deference to the decision of the Magistrate to issue a warrant").

**{18}** In the present case, it is undisputed that the Court of Appeals applied a de novo standard of review to the issuing court's determination of probable cause. *See Williamson*, 2008-NMCA-096, ¶ 2 ("We review the district court's order under the standards set out in [*Nyce*, 2006-NMSC-026, ¶ 8]."); *see also Nyce*, 2006-NMSC-026, ¶ 8 ("We apply a de novo standard of review to a magistrate's determination that an affidavit for a search warrant

6

alleges facts sufficient to constitute probable cause."). The de novo standard of review, however, is inconsistent with the protections afforded by the Fourth Amendment to the United States Constitution. Accordingly, to the extent that the Court of Appeals concluded that Defendant's Fourth Amendment rights had been violated, the Court "erred in failing to grant any deference to the decision of the [issuing court] to issue a warrant." *Upton*, 466 U.S. at 732.

## 2. Standard of Review Under New Mexico Law

**{19}** Having concluded that, under the Fourth Amendment to the United States Constitution, the reviewing court must defer to the issuing court's determination of probable cause and uphold the validity of the search warrant if it is supported by a substantial basis, we next address the proper standard of review under New Mexico law. Defendant claims that, because this Court and the Court of Appeals previously have reviewed the sufficiency of search warrant affidavits de novo, the appellate courts of this state have adopted the de novo standard of review as a matter of state law. *See, e.g.*, *Nyce*, 2006-NMSC-026, ¶ 8; *State v. Gonzales*, 2003-NMCA-008, ¶ 13, 133 N.M. 158, 61 P.3d 867. The State responds that, although there is "confusion surrounding the proper standard of review for warrants in New Mexico," deference must be afforded to the issuing court's determination of probable cause in order to effectuate the State's strong preference in favor of the warrant process. *See Snedeker*, 99 N.M. at 290, 657 P.2d at 617.

**{20}** Our jurisprudence reveals that we have been inconsistent in the articulation and application of the standards that guide our review of an issuing court's determination of probable cause. For example, in *Snedeker* we observed that "[p]robable cause must be based on substantial evidence," and delineated the following standard of review: "(1) only a probability of criminal conduct need be shown; (2) there need be less vigorous proof than the rules of evidence require to determine guilt of an offense; (3) common sense should control; (4) *great deference should be shown by courts to a magistrate's determination of probable cause*." *Snedeker*, 99 N.M. at 289-90, 657 P.2d at 616-17 (emphasis added) (internal quotation marks and citation omitted); *see also State v. Cordova*, 109 N.M. 211, 218, 784 P.2d 30, 37 (1989) (noting "the great deference that we accord to an issuing court's determination of probable cause"); *State v. Steinzig*, 1999-NMCA-107, ¶ 14, 127 N.M. 752, 987 P.2d 409 ("A determination by the judge or magistrate who issued the search warrant that probable cause supports the issuance of the warrant, as a general rule, is given deference by a reviewing court."). In *Snedeker*, the Court emphasized that "[w]hen reviewing affidavits in support of search warrants, a magistrate, and an appellate court, must consider the affidavit as a whole. All direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, should be considered." *Snedeker*, 99 N.M. at 290, 657 P.2d at 617 (citation omitted).

**{21}** In *Snedeker*, we adopted the logic and reasoning of the United States Supreme Court in *Ventresca*, holding that affidavits in support of search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion," because "[a]

grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Snedeker*, 99 N.M. at 290, 657 P.2d at 617 (quoting *Ventresca*, 380 U.S. at 108); *see also State v. Perea*, 85 N.M. 505, 507, 513 P.2d 1287, 1289 (Ct. App. 1973) (adopting the *Ventresca* standard to review the sufficiency of a search warrant affidavit). Accordingly, in *Snedeker*, we held that New Mexico's strong preference in favor of the warrant process mandated the application of a deferential standard of review.

**{22}** Recently, however, we applied a "de novo standard of review to a magistrate's determination that an affidavit for a search warrant alleges facts sufficient to constitute probable cause." *Nyce*, 2006-NMSC-026, ¶ 8. In *Nyce*, we stated that, although "we give deference to a magistrate's decision, and to an officer's observations, experience, and training, their conclusions must be objectively reasonable under all the circumstances." *Id.* ¶ 11. Likewise, the Court of Appeals consistently has applied a deferential standard of review to the factual findings of the issuing court, but a de novo standard of review to its ultimate determination of probable cause. *See, e.g.*, *Gonzales*, 2003-NMCA-008, ¶ 13; *State v. Knight*, 2000-NMCA-016, ¶ 14, 128 N.M. 591, 995 P.2d 1033; *State v. Duquette*, 2000-NMCA-006, ¶ 11, 128 N.M. 530, 994 P.2d 776; *In re Shon Daniel K.*, 1998-NMCA-069, ¶ 8, 125 N.M. 219, 959 P.2d 553.

**{23}** In *Nyce*, we did not acknowledge, much less repudiate, the deferential standard of review announced in *Snedeker*. To reconcile the apparent conflict between *Snedeker* and *Nyce*, however, we review our case law concerning the sufficiency of search warrant affidavits and the appropriate standard of review.

**{24}** The de novo standard of review applied in *Nyce* appears to derive from three primary sources. The first source is *State v. Attaway*, 117 N.M. 141, 144-46, 870 P.2d 103, 106-08 (1994), wherein we clarified the standard of review to be applied to a district court's determination that exigent circumstances existed to excuse compliance with the knock-and-announce rule, which requires law enforcement officers to knock and announce their presence prior to entering a home to execute a search warrant. We determined that the constitutionality of such a search entails a two-part inquiry: first, we must review "the historical facts that animate the transaction to be evaluated," and second, we must apply the law to the facts to determine whether exigent circumstances existed. *Id.* at 144, 870 P.2d at 106. We concluded that the first part of the inquiry "is purely factual, and a trial court is to be given wide latitude in determining that an historical fact has been proven. We review these purely factual assessments to determine if the fact-finder's conclusion is supported in the record by substantial evidence." *Id.* The second part of the inquiry, however, is a mixed question of law and fact, and as such, the standard of review depends on whether the "concerns of judicial administration—efficiency, accuracy, and precedential weight" make it more appropriate for the district courts or the appellate courts to resolve the essential question on its merits. *Id.* (quoting *United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824 (1984)). We determined that "the mixed question involved

8

in determining exigency lies closest in proximity to a conclusion of law, and [held] that such determinations are to be reviewed de novo." *Id.* at 145-46, 870 P.2d at 107-08.

**{25}**     The Court of Appeals subsequently relied on *Attaway* in *In re Shon Daniel K.*, 1998-NMCA-069, ¶ 8, to support the proposition that, "[i]n reviewing the sufficiency of an affidavit submitted in support of the issuance of a search warrant, we apply a de novo standard of review." *See also Duquette*, 2000-NMCA-006, ¶ 11 (applying de novo standard of review pursuant to *In re Shon Daniel K.*); *Knight*, 2000-NMCA-016, ¶ 14 (same); *State v. Whitley*, 1999-NMCA-155, ¶ 3, 128 N.M. 403, 993 P.2d 117 (same).  The Court of Appeals' reliance on *Attaway* was misplaced for several reasons.  First, although the search in *Attaway* was conducted pursuant to a search warrant, the issue before the Court was not the sufficiency of the facts alleged in the search warrant affidavit, but rather, whether exigent circumstances existed to excuse compliance with the knock-and-announce rule.  Second, although we stated in *Attaway* that we have "applied de novo review to . . . the validity of search warrants," *Attaway*, 117 N.M. at 145, 870 P.2d at 107 (citing *Snedeker*, 99 N.M. at 290, 657 P.2d at 617), this statement was inaccurate and misleading, because as previously explained, in *Snedeker*, we applied a deferential standard of review to the validity of search warrants.  *See Snedeker*, 99 N.M. at 290, 657 P.2d at 617.  Lastly, in *Attaway*, we did not hold that all mixed questions of law and fact must be reviewed de novo.  We simply held that, to determine the appropriate standard of review, the reviewing court must balance interests of judicial administration and public policy.  In *Snedeker*, we balanced these interests to conclude that New Mexico's strong preference in favor of the warrant process necessitates the adoption of a deferential standard of review.  Accordingly, despite our broad language in *Attaway*, none of the principles articulated therein support the application of a de novo standard of review to an issuing court's determination of probable cause.

**{26}**     The second source for the de novo standard of review is *State v. Wisdom*, 110 N.M. 772, 774, 800 P.2d 206, 208 (Ct. App. 1990), *overruled on other grounds by State v. Barker*, 114 N.M. 589, 594, 844 P.2d 839, 844 (Ct. App. 1992).  In *Wisdom*, the defendant claimed that the probable cause determination of the suppressing court was entitled to deference and should be upheld "if it is supported by substantial evidence in the record." *Id.*  The Court of Appeals disagreed, concluding that

> the district court and this court are engaged in the same exercise:  a review of the sufficiency of the affidavits submitted to the magistrate court judge in support of the affidavits in question.  Under these circumstances, both the district court and this court must give those affidavits a common sense reading and determine whether the magistrate court judge was entitled to find probable cause.

*Id.*     Accordingly, the Court concluded that the probable cause determination of the suppressing court, as opposed to the issuing court, was not entitled to deference and must be reviewed de novo. *Id.*

9

**{27}** The third source for the de novo standard of review is New Mexico case law concerning the constitutionality of searches conducted without a warrant. For example, in *Wisdom*, although the Court of Appeals noted that "the determination of probable cause by the issuing [court] is entitled to deference," it also stated that "the ultimate question of whether the contents of the affidavit are sufficient is a conclusion of law" subject to de novo review. *Wisdom*, 110 N.M. at 774, 800 P.2d at 208; *see also Steinzig*, 1999-NMCA-107, ¶ 15 (citing *Wisdom* for the proposition that "[t]he ultimate decision, however, as to whether the contents of an affidavit are legally sufficient is a question of law which we review de novo"). In support of the latter proposition, the Court relied on case law holding that "the question of probable cause is a question of law." *Ulibarri v. Maestas*, 74 N.M. 516, 520, 395 P.2d 238, 240 (1964); *see also State v. Marquez*, 103 N.M. 265, 266, 705 P.2d 170, 171 (Ct. App. 1985) ("[T]he question of probable cause is one of law."). *Ulibarri* and *Marquez*, however, involved warrantless searches. In the context of warrantless searches, we review the suppressing court's application of the law to the facts de novo because the suppressing court and this Court "are engaged in the same exercise," *Wisdom*, 110 N.M. at 774, 800 P.2d at 208, namely, conducting an after-the-fact scrutiny to determine whether the warrantless search was justified by probable cause. Under such circumstances, "[i]t is the duty of appellate courts to shape the parameters of police conduct by placing the constitutional requirement of reasonableness in factual context and we can discharge that duty only through meaningful review of lower court determinations." *Attaway*, 117 N.M. at 145, 870 P.2d at 107; *see also Ornelas v. United States*, 517 U.S. 690, 697, 699 (1996) (applying de novo review to warrantless searches because "the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles").

**{28}** Accordingly, in the context of warrantless searches, de novo review is appropriate. However, for the reasons explained in *Snedeker*, de novo review is inappropriate when police officers submit their evidence to a neutral and detached magistrate and procure a search warrant prior to initiating a search. *Cf. Ornelas*, 517 U.S. at 697 (holding that warrantless searches are reviewed de novo, whereas searches conducted pursuant to a search warrant are reviewed under a less demanding standard). This is because deference to the warrant process encourages police officers to procure a search warrant, thereby providing "a layer of protection from unreasonable searches and seizures" and preventing "the competitive pressures of fighting crime to compromise [the officers'] judgment about whether or not to carry out a given search." *Gomez*, 1997-NMSC-006, ¶ 38; *see also Gates*, 462 U.S. at 236 (noting that a deferential standard of review discourages law enforcement officers from conducting "warrantless searches, with the hope of relying on consent or some other exception to the Warrant Clause that might develop at the time of the search").

**{29}** For the foregoing reasons, we hold that an issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause. We therefore expressly disavow the broad unqualified statements in cases

10

such as *Nyce*,[1] *Gonzales*, *Knight*, *Whitley*, *Steinzig*, *Duquette*, *In re Shon Daniel K.*, and *Wisdom*, indicating that an issuing court's determination of probable cause is reviewed de novo. A reviewing court should not substitute its judgment for that of the issuing court. Rather, we clarify that the reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing.

**{30}** We clarify that the substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact. *See State v. Koen*, 152 P.3d 1148, 1151 n.6 (Alaska 2007). Furthermore, we emphasize that the substantial basis standard is not tantamount to rubber-stamping the decision of the issuing court and does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause. *Cf. State v. Alberico*, 116 N.M. 156, 170, 861 P.2d 192, 206 (1993) (holding that the abuse of discretion standard does not prevent an appellate court from conducting a meaningful analysis). Indeed, "when an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate independently to pass judgment on the existence of probable cause. Mere affirmance of belief or suspicion [by the affiant] is not enough." *Cordova*, 109 N.M. at 213, 784 P.2d at 32 (internal quotation marks and citation omitted); *see also* Rule 5-211(E) NMRA ("'probable cause' shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be

---

[1]Nothing in this opinion, however, should be construed to undermine our holding in *Nyce*. First, in *Nyce*, we limited our review to a redacted version of the search warrant affidavit, one in which stale information had been omitted. *Nyce*, 2006-NMSC-026, ¶ 7. We note that, although there is a split of authority on the issue, many jurisdictions apply a de novo standard of review to redacted search warrant affidavits because the issuing court "never had the opportunity in the first place to consider the exact mix of facts" before the reviewing court. *People v. Hebert*, 46 P.3d 473, 481 (Colo. 2002) (rejecting substantial basis standard and reviewing redacted search warrant affidavit de novo); *compare State v. Fisher*, 154 P.3d 455, 477-78 (Kan. 2007) (noting that "jurisdictions are split on the standard for reviewing an excised affidavit" and adopting the substantial basis standard), *with United States v. Barajas-Avalos*, 377 F.3d 1040, 1058 (9th Cir. 2004) ("We review de novo the question whether probable cause exists after allegedly tainted information has been redacted from an affidavit."). Second, in *Nyce*, we gave "due weight to the fact that it [was] a home to be searched and its privacy invaded" when we reviewed the objective reasonableness of the issuing court's determination of probable cause. *Nyce*, 2006-NMSC-026, ¶ 12 ("The presence of objective reasonableness is especially important when dealing with the search of a home."). Lastly, our review was "particularly exacting" in *Nyce* because the defendant's conduct, purchasing tincture of iodine and hydrogen peroxide in a hurried manner, was "equally consistent with legal activity" as it was with illegal activity. *Id.* ¶ 14.

11

credible and for believing that there is a factual basis for the information furnished."). If, after reviewing the affidavit as a whole, the "direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations," *Snedeker*, 99 N.M. at 290, 657 P.2d at 617, does not support the issuing court's determination of probable cause, then the search is invalid and unreasonable. *Nyce*, 2006-NMSC-026, ¶ 11 ("Any search pursuant to a warrant that has an affidavit lacking in probable cause is unreasonable." (citing 2 Wayne R. LaFave, *Criminal Procedure* § 3.3(a), at 83 (2d ed. 1999))). However, if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court "has found probable cause, the [reviewing] courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Ventresca*, 380 U.S. at 109; *see also Snedeker*, 99 N.M. at 292, 657 P.2d at 619 (warning against applying "loose logic and rubber-stamp reactions" to invalidate a search warrant on the basis of "any small item [that appears] to be wrong" in the affidavit).

## B.      Drug-sniffing Dog's Failure to Alert to the Presence of Narcotics

**{31}**    With these principles in mind, we next address whether the affidavit in the present case provided a substantial basis for the issuing court's determination of probable cause. Our review is limited to the four corners of the search warrant affidavit. *Nyce*, 2006-NMSC-026, ¶ 8; *Cordova*, 109 N.M. at 213, 784 P.2d at 32.

> Probable cause exists when there are reasonable grounds to believe that an offense has been or is being committed in the place to be searched. [*Snedeker*, 99 N.M. at 290, 657 P.2d at 617]; [*Gonzales*, 2003-NMCA-008, ¶ 11]. Probable cause is not subject to bright line, hard-and-fast rules, but is a fact-based determination made on a case-by-case basis. *See State v. Aull*, 78 N.M. 607, 612, 435 P.2d 437, 442 (1967) (stating no two cases are precisely alike); *People v. Miller*, 75 P.3d 1108, 1113 (Colo. 2003) (en banc) (stating that probable cause analysis "does not lend itself to mathematical certainties or bright line rules"). "The degree of proof necessary to establish probable cause for the issuance of a search warrant 'is more than a suspicion or possibility but less than a certainty of proof." [*Gonzales*, 2003-NMCA-008, ¶ 12] (quoting *State v. Donaldson*, 100 N.M. 111, 116, 666 P.2d 1258, 1263 (Ct. App. 1983)). When ruling on probable cause, we deal only in the realm of reasonable possibilities, and look to the totality of the circumstances to determine if probable cause is present. *State v. Garcia*, 79 N.M. 367, 368, 443 P.2d 860, 861 (1968); *see United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

*Nyce*, 2006-NMSC-026, ¶ 10.

**{32}**    We agree with Judge Sutin that the facts alleged in the affidavit were sufficient to support the issuing court's determination of probable cause, and therefore, the search warrant must be upheld.

12

In the present case, the UPS store manager knew who Defendant was. He had mailed packages from the store before, but this was the first time he appeared nervous and stated that he did not know what was in the package. Several circumstances create more than a reasonable suspicion of criminal conduct. These include Defendant's nervousness, his inability or unwillingness to state what was in the package, his later recollection that a book was inside when the store manager said that the package would have to be opened, his statement that he was sending the package to his son when the addressee's last name was different from Defendant's last name, the store manager's obvious suspicions, the packaging indicating that Defendant was likely lying to the store manager, the store manager's fairly obvious training and her behavior in regard to suspicious use of common carrier delivery for drug activity, and the officer's generally expressed training and experience.

Furthermore, the officer stated that the UPS store manager observed two containers inside a vacuum sealed bag, each wrapped with duct tape; that the officer himself observed the bag and also a Crystal Light cylinder wrapped with gray duct tape and a square Ferrero candy box also wrapped on the ends with gray duct tape; and that the officer knew from training and experience that "often times narcotics are packaged in unusual containers, wrapped with duct tape, and vacuum sealed, to make the narcotics less detectable by narcotic detection canines" and also that "narcotics are often mailed to other places using common carriers such as UPS."

*Williamson*, 2008-NMCA-096, ¶¶ 22-23 (Sutin, J., dissenting) (citation omitted). Accordingly, the Court of Appeals improperly affirmed the decision of the suppressing court granting Defendant's motion to suppress.

**{33}**   Defendant claims, however, that the drug-sniffing dog's unexplained failure to alert to the presence of narcotics fatally undermined the issuing court's determination of probable cause. We agree with Defendant that the "State has the burden to explain an alert failure, if it can, and the failure to satisfy that burden ought to be a part of the mix in considering the evidentiary sufficiency for probable cause for a search warrant." *Williamson*, 2008-NMCA-096, ¶ 18 (Sutin, J., dissenting). In the present case, however, the issuing court reasonably could have found that the State adequately had explained Coro's failure to alert. Sergeant Brackeen averred that "often times narcotics are packaged in unusual containers, wrapped with duct tape, and vacuum sealed, to make the narcotics less detectable by narcotic detection canines." On the basis of this evidence, the issuing court reasonably could have inferred that Coro's failure to alert was attributable to the method of packaging, which masked the odor of any illegal narcotics that might have been present inside of the containers. Because Coro's failure to alert was inconclusive on the essential question of whether the package contained illegal narcotics and because the facts set forth in the search warrant affidavit otherwise were sufficient to establish probable cause, there was a substantial basis for the issuing court's determination of probable cause.

13

**{34}** Lastly, Defendant claims that, pursuant to *Nyce*, our inquiry must be "particularly exacting" because Defendant's conduct was "equally consistent with legal activity." *See Nyce*, 2006-NMSC-026, ¶ 14 (purchasing tincture of iodine and hydrogen peroxide at multiple stores in a hurried manner is equally consistent with lawful activity); *State v. Anderson*, 107 N.M. 165, 169, 754 P.2d 542, 546 (Ct. App. 1988) (holding that facts consistent with a drug courier profile are insufficient in themselves to establish probable cause, because they "are generally descriptive of hundreds of innocent persons traveling through New Mexico on the interstate every day"). We disagree. As we acknowledged in *Nyce*, "ordinary, innocent facts alleged in an affidavit may be sufficient if, when viewed together with all the facts and circumstances, they make it reasonably probable that a crime is occurring in the place to be searched." *Nyce*, 2006-NMSC-026, ¶ 14. In the present case, although Defendant's conduct was lawful, for the reasons previously explained, the facts and circumstances alleged in the affidavit, when viewed together, made it reasonable to infer that, more likely than not, the package contained illegal narcotics. Stated another way, Defendant's nervous and evasive conduct and the suspicious manner in which the containers were packaged, were more consistent with illegal drug trafficking than they were with innocent lawful activity. Accordingly, Defendant's reliance on *Nyce* is misplaced.

## III. CONCLUSION

**{35}** We conclude that an issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause. Because the facts alleged in the search warrant affidavit were sufficient to explain the drug-sniffing dog's failure to alert to the presence of narcotics and to support a reasonable inference that the package contained illegal narcotics, we uphold the issuing court's determination of probable cause. Accordingly, we reverse the judgment of the Court of Appeals and remand the present case to the district court for further proceedings.

**{36}** **IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**RICHARD C. BOSSON, Justice**

14

_____
**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Williamson*, No. 31,174**

**AE**          **Appeal and Error**

AE-AR          Appellate Review
AE-ST          Standard of Review

**CT**          **Constitutional Law**

CT–FA          Fourth Amendment
CT-SU          Suppression of Evidence

**CA**          **Criminal Procedure**

CA-AW          Affidavit for Search Warrant
CA-PA          Probable Cause
CA-SZ          Search and Seizure