# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2020-NMSC-014**

**Filing Date: August 3, 2020**

**No. S-1-SC-37373**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**JAYCOB MICHAEL PRICE,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cindy Leos, District Judge**

Released for Publication September 8, 2020.

Hector H. Balderas, Attorney General
Marko David Hananel, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Public Defender
Kimberly M. Chavez Cook, Appellate Defender
Santa Fe, NM

for Appellee

## OPINION

**VIGIL, Justice.**

**{1}** The district court suppressed records that police officers obtained from Defendant Jaycob Michael Price's cell phone provider pursuant to a search warrant. Under the authority of the search warrant, the officers obtained (1) subscriber information consisting of Defendant's name, date of birth, social security number, and address, (2) cell-site location information (CSLI), and (3) a list of calls and text messages to and from Defendant's cell phone (call/text records). The district court ruled that the affidavit for the search warrant (Affidavit) established probable cause to obtain

Defendant's subscriber information but failed to establish probable cause for the CSLI and call/text records, and ordered suppression of the CSLI and call/text records. *See* Rule 5-211(A)(4) NMRA (2012, amended 2017) ("A warrant shall issue only on a sworn written statement of the facts showing probable cause for issuing the warrant."). The State appeals as permitted by both statute and procedural rule. NMSA 1978, § 39-3-3(B)(2) (1972); Rule 12-201(A)(1)(a) NMRA. Jurisdiction properly lies with this Court because Defendant is charged with first-degree felony murder. *See State v. Smallwood, 2007-NMSC-005, ¶ 11, 141 N.M. 178, 152 P.3d 821* (concluding "that the legislature intended for [this Court] to have jurisdiction over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment or death"). We affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Affidavit for the Search Warrant

{2} The Affidavit states that on April 2, 2013, at approximately 11:53 p.m., two officers were dispatched to the parking lot of an apartment complex in reference to a shooting. Upon arriving, they made contact with two women at the scene, Margarita and Linda, who were standing next to a sport utility vehicle (SUV). Julio Apodaca (Victim) was lying on the ground next to the SUV and bleeding from his head. Rescue personnel were immediately dispatched to take Victim to the hospital. Margarita told one of the officers that Victim, whom she identified as her brother-in-law, had called her and asked to borrow money. Margarita agreed and told Victim to come to her apartment, where she gave him $100. Victim then left Margarita's apartment for an unknown destination.

{3} About thirty minutes after Victim left the apartment, Margarita and Linda went to get cigarettes, and while they were walking through the parking lot Margarita saw Victim's SUV. As she approached the SUV, Margarita saw Victim sitting in the driver's seat, bleeding from his head. Margarita immediately called 911, and she and Linda performed CPR as instructed until the officers arrived. Victim was taken to the hospital where he was pronounced dead, apparently as a result of a gunshot wound to his head.

{4} Uniformed officers secured the SUV and the surrounding area, and homicide detectives arrived to investigate. At approximately 4:11 a.m. on April 3, 2013, a detective obtained a search warrant to search the SUV. Pursuant to this search warrant, Victim's cell phone was seized from the SUV, and upon physically examining the cell phone detectives discovered that one of the numbers (505-702-4250) was among both the "dialed" and the "received" calls but was not listed as a "contact" in the cell phone. In handwriting the Affidavit adds that the "dialed" and "received" calls to and from 505-702-4250 were placed between the time when Margarita had last seen Victim and when she discovered him in the SUV——an interval of approximately thirty minutes.

{5} A detective phoned 505-702-4250, and when no one answered, the detective hung up without leaving a message. The Affidavit recites that the identity of this person is "crucial" to the investigation and asks that a search warrant be issued to the provider

of cell phone number 505-702-4250 (Sprint/Nextel Communications) for the subscriber information and for CSLI and call/text records for the April 1 to April 5, 2013, period. The record proper does not disclose precisely which CSLI and call/text records police obtained pursuant to the search warrant because the record proper on appeal does not include the search warrant's return and inventory. *See* Rule 9-214 NMRA ("Search warrant") (including the "RETURN AND INVENTORY" form with the form prescribed for authorization of a search warrant). However, at the hearing on the motion to suppress the cell phone records, the district court asked counsel what was obtained pursuant to the search warrant and learned that the records obtained were Defendant's subscriber information and CSLI and call/text records as we have described.

## B.    Proceedings in the District Court

**{6}**    Information provided in the Affidavit and obtained from further investigation tied Defendant to the number. Defendant was indicted on several charges, including first-degree felony murder of Victim.

**{7}**    Defendant filed a motion to suppress the cell phone records obtained under the search warrant. Defendant argued that the Affidavit failed to establish probable cause for the cell phone records because "[t]he only fact in the affidavit related to the telephone number (505) 702-4250 is that it was dialed and received by [Victim's] phone." Defendant asserted that this did not amount to substantial evidence of probable cause because "otherwise the police would be able to seize the cell phone records of every single person that called, or was called, by a victim." In response, the State asserted that the Affidavit established probable cause for the district court to issue the search warrant.

**{8}**    Following a hearing, the district court issued a written order partially granting the motion to suppress. The district court determined that the Affidavit "lacked sufficient detail to establish probable cause for the scope of this search" because "[o]ther than noting that the calls were made to and from the listed phone number, this is no nexus between 505-7[02]-4250 and this crime." The district court's order stated that "there is no indication within the four corners of the warrant as to when . . . [Victim] called [Margarita], there is no indication when he arrived at her apartment, how long he stayed at the apartment or when he received the money and ultimately left." The district court's order repeated, "Other than noting that the calls were made to and from the listed phone number, this is no nexus between 505-7[02]-4250 and this crime." The district court therefore concluded, "Allowing the search beyond the basic identifying information as to the subscriber of this phone number is overly broad, intrusive and not supported by probable cause." Accordingly, the district court granted the motion to suppress as to the CSLI and call/text records and denied the motion to suppress as to the subscriber information.

## II.    DISCUSSION

## A.    *Carpenter v. United States*

**{9}**     In *Carpenter v. United States*, ___ U.S.___, 138 S. Ct. 2206, 2221, 2223 (2018), the United States Supreme Court held that the Fourth Amendment to the United States Constitution requires a search warrant supported by probable cause to obtain CSLI records from a cell phone provider.[1] As described in *Carpenter*, CSLI is information collected and stored by wireless carriers "for their own business purposes." *Id.* at 2212. CSLI consists of "a time-stamped record" created each time a cell phone connects to the radio antennas of a wireless carrier's network. *Id.* at 2211. These radio antennas are called "cell sites." *Id.* "Cell sites typically have several directional antennas that divide the covered area into sectors." *Id.* Most cell phones connect to the antennas of the nearest cell sites "several times a minute whenever their signal is on, even if the owner is not using one of the phone's features." *Id.* The CSLI supports "mapping" of the approximate locations of a cell phone over time by "triangulation" of the locations of the antennas of cell sites with which the cell phone has simultaneously connected. *Id.* at 2217, 2219. *See State v. Carrillo*, 2017-NMSC-023, ¶ 34, 399 P.3d 367 (describing how a cell phone operates by continually sending signals to and collecting signals from cell towers throughout the cell network).

**{10}**     This mapping of a cell phone's locations in a period of time "provides an all-encompassing record of the holder's whereabouts." *Carpenter*, 138 S. Ct. at 2217. "A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Id.* at 2218. Thus, CSLI data "provides an intimate window into a person's life, revealing not only his particular movements, but through them, his familial, political, professional, religious, and sexual associations." *Id.* at 2217 (internal quotation marks and citation omitted). Because "individuals have a reasonable expectation of privacy in the whole of their physical movements[,]" intrusion into that private sphere, the United States Supreme Court held, qualifies as a search under the Fourth Amendment and requires a warrant supported by probable cause. *Id.* at 2213, 2217; *see Katz v. United States*, 389 U.S. 347, 351, 357 (1967) (holding that "the Fourth amendment protects people, not places" and that when an individual "seeks to preserve [something] as private" and this expectation of privacy is "constitutionally protected," official intrusion into that privacy is a search that requires a warrant supported by probable cause).

## B.     Standard of Review

**{1}**     The search warrant was issued by a district court judge who determined that there was probable cause to believe there would be evidence of a crime in Defendant's

[1]Under the New Mexico Electronic Communications Privacy Act, NMSA 1978, §§ 10-16F-1 to -4 (2019, as amended through 2020), "the search and seizure of electronic information" must "comply with all New Mexico and federal laws, including laws prohibiting, limiting or imposing additional requirements on the use of search warrants," § 10-16F-3(D)(3). Applicable provisions allow "retention of electronic communication information" seized if "there is probable cause to believe that the information constitutes criminal evidence." *See* §§ 10-16F-3(D), (H)(2) (2019). Current amendments to Section 10-16F-3 "plac[ing] additional requirements on government entities when obtaining warrants for the search and seizure of electronic information," *see* § 10-16F-3 annot. to the 2020 amendment (effective March 4, 2020), were not in effect when the search warrant issued in this case. We express no opinion on what impact, if any, the statutes and the current amendments might have on the result reached in this case.

cell phone records. The issuing judge's determination of probable cause was then reviewed by a different district court judge who presided over the criminal case, and the order of the reviewing district court is now before us. As we explain next, the standard for reviewing the determination of probable cause made by an issuing judge is the same, whether the review is pursuant to a motion to suppress or on appeal. We now review the issuing judge's determination of probable cause using the same standard the reviewing district court judge was obligated to use.

**{12}** *State v. Williamson*, 2009-NMSC-039, ¶ 17, 146 N.M. 488, 212 P.3d 376, pointed out that under the federal standard of review, an issuing court's determination of probable cause under the Fourth Amendment is entitled to "great deference" by a reviewing court. Applying this deference, the federal standard for reviewing an issuing court's determination of probable cause is whether the issuing court had a substantial basis for concluding that the search would uncover evidence of wrongdoing. *Id.* If a substantial basis exists, the reviewing court affirms the issuing court's finding of probable cause. *Id.* ¶ 29. *Williamson* also recognized that certain prior New Mexico opinions applied a de novo standard for reviewing an issuing court's determination of probable cause. *Id.* In expressly disavowing these opinions, the *Williamson* Court aligned New Mexico with the federal standard, holding that a "reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* In ruling on the motion to suppress in this case, the district court was required to apply this standard to the issuing court's finding of probable cause. Likewise, our inquiry focuses on the issuing court's finding of probable cause and not the district court's conclusion when it ruled on the motion to suppress. *State v. Evans*, 2009-NMSC-027, ¶ 12, 146 N.M. 319, 210 P.3d 216; *see State v. Trujillo*, 2011-NMSC-040, ¶ 19, 150 N.M. 721, 266 P.3d 1 ("[U]nder a deferential standard the reviewing judge does not substitute his or her judgment for that of the issuing judge.").

**{13}** "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Williamson,* 2009-NMSC-039, ¶ 30. "[T]he substantial basis standard is not tantamount to rubber-stamping the decision of the issuing court and does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause." *Id.* When "the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (brackets omitted) (internal quotation marks and citation omitted). The deferential substantial basis standard of review established in *Williamson* continues to govern our review of an issuing court's finding of probable cause. *See State v. Gurule*, 2013-NMSC-025, ¶¶ 16-17, 303 P.3d 838; *State v. Haidle*, 2012-NMSC-033, ¶ 10, 285 P.3d 668.

## C.    Probable Cause

**{14}** The constitutional validity of a search warrant, under the Fourth Amendment as well as Article II, Section 10 of the New Mexico Constitution, depends on whether the affidavit for search warrant demonstrates that there is probable cause to believe that a crime is occurring or that seizable evidence of a crime exists at a particular location. *Williamson,* 2009-NMSC-039, ¶ 14.

> Probable cause exists when there are reasonable grounds to believe that an offense has been or is being committed in the place to be searched. Probable cause is not subject to bright line, hard-and-fast rules, but is a fact-based determination made on a case-by-case basis. The degree of proof necessary to establish probable cause for the issuance of a search warrant is more than a suspicion or possibility but less than a certainty of proof. When ruling on probable cause, we deal only in the realm of reasonable possibilities, and look to the totality of the circumstances to determine if probable cause is present.

*Id.* ¶ 31 (internal quotation marks and citations omitted) (quoting *State v. Nyce*, 2006-NMSC-026, ¶ 10, 139 N.M. 647, 137 P.3d 587, *disavowed on other grounds by Williamson*, 2009-NMSC-039, ¶ 29). In other words, "before a valid search warrant may issue, the affidavit must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *Evans*, 2009-NMSC-027, ¶ 11 (internal quotation marks and citation omitted).

**{15}** In our review of an affidavit for probable cause, we cannot consider "[a]ny information that was not provided to the issuing judge at the time the search warrant affidavit and warrant were presented[.]" *State v. Sabeerin*, 2014-NMCA-110, ¶ 13, 336 P.3d 990. This requires our review to focus on "the information contained in the four corners of the affidavit." *Gurule*, 2013-NMSC-025, ¶ 17.

## D.     Analysis

**{16}** We now apply the deferential standard of review to determine whether the Affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provided a substantial basis for the issuing judge to determine there was probable cause to believe that (1) the cell phone subscriber information, (2) the CSLI, and (3) the call/text records contained evidence of a crime. We begin with the CSLI which, as we have discussed, requires a search warrant for police to obtain from a cell phone provider. *See Carpenter*, 138 S. Ct. at 2221.

**{17}** Defendant argues that facts necessary to establish probable cause to obtain his CSLI were missing from the Affidavit. Defendant contends that the Affidavit contains no facts establishing (1) that the calls between Defendant's cell phone and Victim's cell phone actually connected and for how long, (2) whether there was communication between Defendant and Victim prior to the night he died, (3) whether Victim generally saved contacts in his phone, (4) whether law enforcement tried more than once to contact Defendant, and (5) whether there were calls to or from other numbers during the

thirty-minute window. Defendant argues further that the critical issue is whether Defendant and Victim actually spoke, not whether calls were dialed and received between them. We are not persuaded.

**{18}**    The district court's determination and Defendant's argument that the calls demonstrated no nexus to the crime other than the fact that Victim's phone logged calls made to and from the listed number are both erroneous. Police discovered Victim's cell phone during an authorized search and manually inspected the cell phone. They found a number, not saved in Victim's cell phone contacts, for both a "dialed" call and a "received" call made within thirty minutes before Victim's death. When police attempted to contact Defendant's cell phone number, nobody answered. The other information supporting a finding of probable cause included that Victim had contacted Margarita late at night to borrow money, went to her apartment to obtain the money, and was shot in the apartment's parking lot within thirty minutes after leaving Margarita's apartment. "We have never said that police must establish every link in the inferential chain that leads to probable cause. Rather, all that is required is that police make a showing that permits 'more than a suspicion or possibility but less than a certainty of proof.'" *Evans*, 2009-NMSC-027, ¶ 22 (citation omitted). The calls linked to the cell phone number of the unknown subscriber were relevant to Victim's shooting.

**{19}**    CSLI is the record of the locations of a cell phone over time. Probable cause to believe that a crime has been committed will "often exist simultaneously" with probable cause to believe that there is evidence at the place to be searched. *Id.* ¶ 24. When this is not the case, "[t]he fundamental inquiry is whether there is probable cause to believe there will be evidence of a crime *at a particular location* [i.e., *place*]." *Id.* ¶ 25 (emphasis in original). Here, the *place* to be searched is within the record of cell phone locations held by the cell phone provider, which include where the cell phone was located at the time of the calls between Defendant's cell phone and Victim's. A fair inference from the Affidavit is that Victim left Margarita's apartment late at night, after borrowing money from her, and went to his SUV in the apartment parking lot where he had conversations with an unknown person before he was shot in the head. The period of time between leaving the apartment and the shooting was no longer than thirty minutes. Although the acts just described appear to be ordinary, noncriminal activities, when viewed in the context of the surrounding circumstances, they amount to more than "mere suspicion" that evidence of the crime was located in the CSLI.  *See Haidle*, 2012-NMSC-033, ¶ 30 ("Mere suspicion about ordinary, non-criminal activities, regardless of an officer's qualifications and experience, does not satisfy probable cause." (internal quotation marks and citation omitted)).

**{20}**    We conclude that the totality of the circumstances described in the Affidavit establishes reasonable grounds for the judge issuing the search warrant to find probable cause that the unknown person talking to Victim was in the vicinity of the parking lot when the conversations took place before Victim was shot. The CSLI included evidence of that person's location during the relevant time frame. Therefore, while this is a close case, we affirm the issuing judge's finding of probable cause as to the CSLI. Under our deferential standard of review, whether we would have viewed the

Affidavit differently makes no difference. *Gurule*, 2013-NMSC-025, ¶ 17. The issue before us is whether the Affidavit provided "a substantial basis to support a finding of probable cause" by the judge issuing the search warrant. *Id.* ¶ 16 (internal quotation marks and citation omitted). We conclude that it did.

**{21}** We assume, but do not decide, that probable cause was required to obtain both subscriber information for Defendant as the owner of the cell phone and call/text records listing calls and texts made from Defendant's cell phone. *But see United States v. Clenney*, 631 F.3d 658, 666 (4th Cir. 2011) (concluding that obtaining basic subscriber information, such as the name and address of the customer and cell phone call logs, does not require a search warrant); *United States v. Streett*, 363 F. Supp.3d 1212, 1308-09 (D.N.M. 2018) (concluding that *Carpenter* does not apply to "subscriber information," which provides no insight into the subscriber's movements and "fits neatly under existing Supreme Court and Tenth Circuit precedent under the third-party doctrine" that a person has no expectation of privacy concerning information the person has voluntarily given to a third party).

**{22}** We further conclude that the nexus between the crime and Defendant's cell phone subscriber information and call/text records is clearly set forth in the Affidavit. A fair inference is that the owner of a cell phone is usually the person using it. Under our deferential standard of review, the Affidavit establishes probable cause to identify the owner, therefore identifying who called Victim shortly before he was shot. Likewise, the Affidavit establishes probable cause to believe that records showing other calls or text messages between Defendant's phone and Victim's phone contained evidence of the crime. We therefore conclude that the Affidavit provided probable cause for the judge issuing the search warrant to believe that records revealing the identity of the owner and logging Defendant's other conversations or text messages with Victim (excluding content) contained evidence of the crime.

**{23}** For the foregoing reasons we hold that the district court correctly concluded that the Affidavit as a whole, together with reasonable inferences to be drawn therefrom, provided the issuing judge with a substantial basis for determining that there was probable cause to believe that Defendant's subscriber information contained evidence of a crime. We hold that the district court erred in ruling that there was no probable cause to obtain Defendant's CSLI and call/text records.

## III.   CONCLUSION

**{24}** We affirm in part and reverse in part the order of the district court partially granting Defendant's motion to suppress the cell phone records. We remand the case to the district court for further proceedings in accordance with this opinion.

**{25}   IT IS SO ORDERED.**

**MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

**BARBARA J. VIGIL, Justice**

**JUDITH K. NAKAMURA, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**